OPINION OF THE COURT
Devin P. Cohen, J.
Plaintiff’s motion for summary judgment and defendant’s cross motion for summary judgment are decided as follows:
Plaintiff brought this action against defendant to recover assigned first-party no-fault benefits. Plaintiff sufficiently established its prima facie entitlement to summary judgment through the affidavit of its owner, Irina Kazanskaya, who states that plaintiff mailed three claims for benefits to defendant’s Arizona location. The first claim is dated December 8, 2014, in *189 the amount of $1,114.84 (claim 1); the second claim is dated January 6, 2015, in the amount of $1,087.39 (claim 2); and the third claim is dated February 5, 2015, in the amount of $384.23 (claim 3). Ms. Kazanskaya states that none of the claims were paid within 30 days of defendant’s receipt of the claim (Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co., 25 NY3d 498, 507 [2015]). Ms. Kazanskaya further established plaintiff’s procedures for generating and mailing the claims (St. Vincent’s Hosp. of Richmond v Government Empls. Ins. Co., 50 AD3d 1123, 1123 [2d Dept 2008]).
Following submission of each of the claims, defendant had 30 days from receipt to pay or deny the claim for any defense, other than a non-precludable defense (Viviane Etienne Med. Care, 25 NY3d at 506). According to the affidavit of Travis Miller, a no-fault litigation supervisor with defendant, defendant received claim 1 on December 17, 2014, and generated a denial of that claim on June 3, 2015. Defendant received claim 3 on February 20, 2015, and generated a denial of that claim on June 8, 2015. As to claim 2, defendant never denied it, and defendant alleges that it did not receive this claim. As Mr. Miller explains, defendant mailed the denials within one day of generating them.
Mr. Miller further states in his affidavit that defendant denied plaintiff’s claims because of plaintiff’s purported failure to appear for an examination under oath (EUO). Failure to attend an EUO is a precludable defense that must be preserved through a timely denial (Compas Med., P.C. v Praetorian Ins. Co., 49 Misc 3d 145[A], 2015 NY Slip Op 51667[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). Because defendant denied claim 1 and claim 3 more than 30 days after receipt, defendant’s EUO no-show defense is waived unless defendant’s time to pay or deny the claim was tolled such that its June 2015 denials were timely.
In this case, defendant contends that it timely requested recorded statements, verification requests, and EUOs from plaintiff and Venton Carmichael, the assignor, which effectively tolled the time by which defendant had to either pay or deny claims 1 and 3. First, Mr. Miller states in his affidavit that defendant sought to obtain a “recorded statement” from the assignor. To that end, Mr. Miller states that defendant sent letters to plaintiff and the assignor requesting the recorded statement. These letters are dated December 24, 2014, January 8, 2015, and February 4, 2015. Mr. Miller states that de *190 fendant obtained the recorded statement from the assignor on March 12, 2015.
The question arises as to whether a request for a recorded statement effectively tolls the time by which an insurer must pay or deny a claim. First, we must be clear about what a “recorded statement” is. Defendant’s letters identified the event as a “statement” and, subsequently, as a “recorded statement,” but did not specify what a recorded statement entailed. It merely stated that defendant wanted a statement from the assignor discussing the accident and the injuries sustained. In addition, defendant did not treat the request for a recorded statement as an EUO. In fact, the defendant’s letters state that asking for a recorded statement does not preclude defendant from requiring EUOs or medical examinations. Thus, defendant implies, if not explicitly states, that a recorded statement is distinct from an EUO.
Furthermore, in an apparent matter of first impression, cases in this state have not yet specified what a “recorded statement” is or how it should be treated. Certain cases used the terms “recorded statement” and “EUO” interchangeably, but did not state whether the event in question was a formal examination in which testimony was given under oath (see Westchester Med. Ctr. v Government Empls. Ins. Co., 2009 NY Slip Op 30914[U] [Sup Ct, Nassau County 2009]; see also American Commerce Ins. Co. v Sanford, 2014 NY Slip Op 31108 [U] [Sup Ct, NY County 2014]). The term “recorded statement” also has been used in the context of notice of a claim (see Matter of New York Cent. Mut. Fire Ins. Co. [Bett], 12 AD3d 1024, 1024 [4th Dept 2004] [holding that a recorded statement was not enough notice of claim to the insurance company]).
Additionally, the relevant regulation does not explicitly state that recorded statements, however they are defined, toll the time to pay or deny a claim (see 11 NYCRR 65-3.5 [b]). Cases construing 11 NYCRR 65-3.5 (b) do not suggest that the regulation should be read so broadly as to include recorded statements (see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 280, 285 [1997] [suggesting in dicta that interrogatories, a “distinct request for information,” would not be a sufficient mode of verification]; but see St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338, 340 [2d Dept 2002] [holding that the statutory period in which insurer was required to pay or deny the hospital’s claim was tolled by a request for patient records that was made by letter rather *191 than by prescribed forms]). As a result, there appears to be no basis to hold that a request for a recorded statement should toll the time by which defendant must pay or deny a claim.
Defendant also suggests that the “verification requests/ delay letters” it mailed in response to claims 1 and 3 tolled the time to deny the claims. Mr. Miller states that the first verification requests were mailed on December 31, 2014 for claim 1 and on March 3, 2015 for claim 3. Although a verification request may be made in letter form,
“an insurer may not rely on a letter, even if denominated a verification request, that merely informs a claimant that a decision on the claim is delayed pending an investigation, and without specifying a particular form of verification and the person or entity from whom the verification is sought, to toll the 30-day claim determination period” (Ocean Diagnostic Imaging P.C. v Citiwide Auto Leasing Inc., 8 Misc 3d 138[A], 2005 NY Slip Op 51314[U], *1 [App Term, 2d & 11th Jud Dists 2005], quoting Melbourne Med., P.C. v Utica Mut. Ins. Co., 4 Misc 3d 92, 94 [App Term, 2d & 11th Jud Dists 2004]; New Way Acupuncture, P.C. v New York Cent. Mut. Fire Ins. Co., 49 Misc 3d 148[A], 2015 NY Slip Op 51706[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]).
Here, defendant’s request for “verification” generally seeks “the circumstances surrounding the accident; the causal relationship of the claimed injuries sustained in this accident; and whether there is coverage for this claim.” The defendant fails to state with specificity what part of the claim concerned it and the exact information it needs to conduct an investigation. Furthermore, the verification request itself is included at the end of certain explanations of benefits, which are congested with other information, in minuscule font. Defendant’s requests for additional information are mere delay letters, which did not effectively toll defendant’s time to pay or deny plaintiff’s claims.
Mr. Miller states that, following the request for the assign- or’s recorded statement, defendant decided it needed an EUO of plaintiff, and retained the law firm of Bruno, Gerbino & Soriano, LLP to conduct that EUO. According to the affidavit of Shawn Kelleher, Esq., a partner with the Bruno firm, the firm sent a letter to plaintiff, dated March 24, 2015 (97 and 32 days after defendant received claims 1 and 3, respectively), *192 asking plaintiff to appear for an EUO on April 17, 2015. When plaintiff did not appear for the EUO, the firm sent a letter to plaintiff, dated April 20, 2015, asking plaintiff to appear for an EUO on May 18, 2015. Mr. Kelleher states that plaintiff did not appear for that EUO, either.
Defendant was required to pay or deny claims 1 and 3 within 30 days of receipt (Compas Med., 2015 NY Slip Op 51667[U], *1). Defendant did not do so. Further, defendant did not toll its time to pay or deny claims 1 or 3, since it requested the EUO more than 30 days after receipt of those claims (Neptune Med. Care, P.C. v Ameriprise Auto & Home Ins., 48 Misc 3d 139[A], 2015 NY Slip Op 51220 [U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). Therefore, defendant’s denials of claim 1 and claim 3 were untimely.
As to claim 2, defendant alleges that the bill was never received. Furthermore, defendant purports that plaintiff’s mailing of the claims to defendant’s Arizona location was improper due to the parties’ past dealings. Proof of proper mailing gives rise to a rebuttable presumption that the item was received by the addressee (Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679, 680 [2d Dept 2001]). The presumption may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed (id.). In order to rebut the presumption of receipt, the defendant, in addition to denying receipt, must show that the plaintiff did not follow routine office practices or that plaintiff’s routine office practices are so careless that it would be “unreasonable to assume that the notice was mailed” (see Nassau Ins. Co. v Murray, 46 NY2d 828, 830 [1978]).
To begin, defendant’s contention that plaintiff should have known that its location was not in Arizona is without merit. Plaintiff claims that it sent the three claims to the same Arizona address, and defendant acknowledges that it received at least two of them. As to the mailing of claim 2, plaintiff submitted an official United States Postal Service (USPS) mailing form designed to provide a record for accountable mail. However, the document contains conflicting date stamps: one stamp for January 8, 2015, and the other for January 8, 2016. Thus, the date of actual mailing is unclear. Essentially, plaintiff did not establish that claim 2 was mailed pursuant to its own office procedures. Although Ms. Kazanskaya, who claims to have personal knowledge of company’s procedures, detailed the *193 office procedures for mailing, the dueling date stamps on the USPS form conflict with the procedures described in her affidavit. Hence, office procedures do not establish proper mailing in this instance (see New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d 547, 547-548 [2d Dept 2006]; see also Alur Med. Supply, Inc. v GEICO Ins. Co., 27 Misc 3d 142[A], 2010 NY Slip Op 51053 [U], *1-2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]). Because questions of fact prevent this court from finding that plaintiff mailed claim 2, this court likewise does not presume that defendant received claim 2.
For the foregoing reasons, defendant’s cross motion for summary judgment is denied. Plaintiff’s motion for summary judgment is granted only as to claims 1 and 3. Plaintiff may enter judgment for $1,499.07 plus statutory costs, attorney’s fees, disbursements and interest. With regard to claim 2, plaintiff has not yet established that the claim was timely mailed. However, if claim 2 is shown to have been timely mailed, then it was not timely denied by defendant. Accordingly, this case shall proceed to trial to determine whether or not claim 2 was timely mailed.